UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

KENNETH MURPHY and wife, )
RENNEE FORD, )
  )
      Plaintiffs, ) No. 1:13-CV-108
  )
v. ) Judge Curtis L. Collier
  )
ALLSTATE INDEMNITY COMPANY, )
  )
      Defendant.

**M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant Allstate Indemnity Company ("Defendant") (Court File No. 10) seeking dismissal of the complaint filed by Plaintiffs Kenneth Murphy and Renee Ford ("Plaintiffs") (Court File No. 1-2). Plaintiffs filed a statement of facts (Court File No. 13) and a response brief (Court File No. 14). Defendant filed a response to Plaintiffs' statement of facts (Court File No. 18) and a reply brief (Court File No. 19). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment.

**I.    FACTS**

Plaintiffs' Chattanooga home, located at 14 Fair Oaks Place, was damaged by a storm on April 24, 2011 (Court File No. 15, Kenneth Murphy Aff., ¶ 2). The home was insured by Defendant for up to $193,991 of real property loss (Court File No. 10-2). The insurance contact contains the following limitations period provision:

> 12. Suit Against Us. No suit or action may be brought against us unless there has been full compliance with all policy terms. *Any suit or action must be brought within one year after the inception of loss or damage*.

(*id.*, p. 18) (emphasis added). On May 1, 2011, Defendant's inspector inspected the property, and on May 18, 2011 Defendant issued payment of $73,076.29 to Plaintiffs ($68,127.81 for damage to

the home and $4,948.48 for damage to other structures) (Court File No. 10-2, Jennifer Virgen Aff., ¶ 4; Court File No. 15, Murphy Aff., ¶ 5).[1] Plaintiffs negotiated the draft on May 25, 2011 (Court File No. 10-2, Virgen Aff., ¶ 5).

On June 9, 2011, Plaintiffs informed Defendant that they received opinions from four construction consultants who stated that the home could not be repaired within the policy limits (Court File No. 15, Murphy Aff., ¶ 7). Upon Plaintiffs' request, Defendant arranged for an independent engineer to perform another inspection (Court File No. 10-2, Virgen Aff., ¶ 7-8). On July 20, 2011, Defendant informed Plaintiffs that the engineer determined that the original estimate of $68,127.81 was adequate and that no additional payments for damage to the structure would be made (*id.*, ¶ 9; Court File No. 15, Murphy Aff., ¶ 8). Plaintiffs disagreed with the assessment and thought it "incorrectly and inaccurately minimized the losses sustained" (Court File No. 15, Murphy Aff., 8).

There is disagreement regarding whether in late 2011 Plaintiffs requested an appraisal or requested that an arbiter be brought in to solve the dispute (Court File No. 15, Murphy Aff., ¶ 11; Court File No. 10-2, Virgen Aff., ¶ 17-19). Whichever request may have been made, the parties agree that it was subsequently withdrawn by Plaintiffs, who instead asked Defendant to send another inspector to the property (Court File No. 15, Murphy Aff., ¶ 12; Court File No. 10-2, Virgen Aff., ¶ 20). As a result of this inspection, Defendant sent a letter to Plaintiffs dated April 2, 2012 informing them that Defendant would not make any additional payment for damage to the structure on the ground that Plaintiffs failed to mitigate damage (Court File No. 10-2, Virgen Aff., ¶ 20-21;

---

[1] The Court acknowledges there is disagreement about what exactly the inspector said while on the premises, but the Court does not find it would be a material fact one way or the other.

Court File No. 15, Murphy Aff., 16). The letter also stated that Defendant would "continue to work with you to evaluate your other damages." At the time, Plaintiffs were still in the process of claiming damage to personal property.

On March 4, 2013, Plaintiffs filed suit in Hamilton County Circuit Court, alleging that Defendant breached its contractual obligation to pay for damages under the insurance policy; violated the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.*; and violated Tenn. Code Ann. § 56-7-105 by engaging in bad faith in its dealings. After removing the case to this Court pursuant the Court's diversity jurisdiction, Defendant moved for summary judgment (Court File No. 10).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether

3

"the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.  ANALYSIS

### A. Breach of Contract

Defendant argues Plaintiffs suit is untimely because it was filed outside of the period of limitations agreed upon by the parties. The contract provides that "[a]ny suit or action must be brought within one year after the inception of loss or damage" (Court File 10-2, p. 18). Under Tennessee law, parties to an insurance contract may agree to a limitations period different from the state's default statute of limitations for contract claims. *See Smith v. Allstate Ins. Co.*, No. 92364-QRD, 1987 WL 30150, *1 (Tenn. Ct. App. Dec. 30, 1987). Thus the one-year limitations period to which the parties agreed is binding.

The contract also provides that the insured must, "within 60 days after the loss, give [Allstate] a signed, sworn proof of the loss." Tennessee law provides that such a proof-of-loss period extends the limitations period because the insurer's immunity during the proof-of-loss period

4

postpones accrual of the insured's cause of action. *See Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn Ct. App. 1938) (explaining that the policy in question "contained provisions for notice and proofs of loss to be furnished by the insured to the insurer within sixty days from the date of the loss, which, in effect, afforded the insurer immunity from suit for such period of sixty days, and thereby postponed the accrual of the cause of action accordingly"); *Smith*, 1987 WL 30150, *2 (same). A caveat is that, "[i]f the insurance company affirmatively denies the insured's claim before the expiration of the settlement of loss immunity period, the contractual limitation of actions provision commences to run upon the date of such denial." *Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 329 (Tenn. Ct. App. 2003). In other words, the limitations period will start running early if the insurer affirmatively denies a claim before the proof-of-loss period is over. This means that the time period during which a suit may be brought will generally be, at most, the proof-of-loss period plus the limitations period.

Accordingly, Plaintiffs had at most one year and sixty days from the date of loss to sue Defendant on contract claims. The storm damage having occurred on April 24, 2011, Plaintiffs had until June 24, 2012 to sue. They filed suit on March 4, 2013, nearly one year after the limitations period expired. Their contract claims should therefore be precluded.

Plaintiffs respond by noting that Defendant never reminded them about the limitations period or told them when it was about to close. The Court does not find this persuasive, however, as the contract did not require such additional notice be given. Further, it is black letter law that absent unusually circumstances a party to a contract is presumed to know its contents. *See Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 785 (Tenn. Ct. App. 2010) (quoting *Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn.Ct.App.2007)) ("The law imparts a duty on parties to a

5

contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril.").

Plaintiffs also assert they were given an extension to file a proof of loss, which extended the limitation period. However, Plaintiffs have pointed to no evidence showing this occurred. While Defendant may have given plaintiffs extra time to file for loss of personal property (Court File No. 15, Murphy Aff., ¶ 8), that would not affect the claim for damage to the structure, which is the basis of this suit. Moreover, Defendant's sending an engineer and an inspector to conduct additional assessments of damage to the structure outside of the sixty-day proof-of-loss window does not alter the limitations period. If limitations periods were to toll merely because further negotiation, inspections, and adjustments occur, it would defeat the purpose of the limitations period. Lengthening the period for suit in such a way would only serve to discourage the insurer from trying to work with the insured to arrive at a fair payment.

Once the clock on the limitations period started ticking, Plaintiffs had a series of choices regarding whether to keep negotiating, whether to invoke certain provisions of the contract, and, particularly as the limitations period drew to a close, whether to file a law suit. Because Plaintiffs waited too long to invoke the last option, the Court must dismiss their contract claims.

### B. Tennessee Consumer Protection Act

Defendant also contends that Plaintiffs' TCPA claim fails because the TCPA no longer applies to insurance disputes. According to Tenn. Code Ann. § 56-8-113, titles 50 and 56 of Tennessee's code are the only titles that contain statutory remedies for disputes arising from

6

insurance agreements.[2] Under § 56-8-113, the TCPA may not be used as a vehicle for an insurance action as it is found in title 47. §§ 47-18-101 *et seq.* The slight wrinkle for this case is that § 56-8-113 only applies to causes of action accruing after April 29, 2011. *Montesi v. Nationwide Mut. Ins. Co.*, No. 2:12-CV-02399-JTF, 2013 WL 4522905 (W.D. Tenn. Aug. 26, 2013) (citing 2011 Tenn. Pub. Acts ch. 130, § 2). Plaintiffs assert that their cause of action accrued on April 24, 2011, the date of the storm damage. This cannot be true, however, as an insurance "cause of action accrues at the time that the insurance company denies liability for the insured's claim." *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 398 (Tenn. Ct. App. 2010). Here, Defendant's inspector did not even survey the damage until May 30, 2011. Accordingly, because the cause of action accrued some time after April 29, 2011, § 56-8-113 bars Plaintiffs from bringing a claim under the TCPA.

### C. Bad Faith Refusal to Pay

Defendants contend that Plaintiffs have not provided any evidence showing that Defendant refused to pay in bad faith under Tenn. Code Ann. § 56-7-105. To recover a bad faith penalty under the statute, the plaintiffs must establish the following:

> (1) that the policy became due and payable under its terms; (2) the insured made a formal demand for payment; (3) sixty days passed from the date of making the demand, unless the insurer refused to pay the claim prior to the passage of sixty days; and (4) the refusal to pay was in bad faith.

---

[2] The statute provides that,
[n]otwithstanding any other law, title 50 and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a).
Tenn. Code Ann. § 56-8-113.

7

*Taylor v. Standard Ins. Co.*, No. 08–2585 V, 2009 WL 113457, at *5 (W.D.Tenn. Jan.13, 2009) (citing *Minton v. Tenn. Farmers Mut. Ins. Co.*, 832 S.W.2d 35, 38 (Tenn.Ct.App.1992)). Because of the statute's penal nature, an insurer is entitled to sufficient notice in a plaintiff's demand for payment that a claim for bad faith will be made. *PacTech, Inc. v. Auto-Owners Ins. Co.*, 292 S.W.3d 1, 9 (Tenn. Ct. App. 2008). As the court in *PacTech* explained,

> even though an insured has completed all forms required by the insurer, this is insufficient to meet the requirement of the statute that formal demand be made, and we concluded that such requirement shows that the insurer is "entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay."

*Id*. (quoting *Walker v. Tenn. Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn.Ct.App.1977)); *see also Silcox v. State Farm Fire & Cas. Co.*, No. 3:11-CV-264-TAV-CCS, 2014 WL 297308, *7 (E.D. Tenn. Jan. 27, 2014) (dismissing claim because plaintiff had "failed to put State Farm on notice of her intention to pursue litigation and to seek the bad faith penalty pursuant to Tenn. Code. Ann. § 56-7-105"). In the present case, Plaintiffs have not pointed to any evidence showing they made a formal demand for payment that put Defendant on notice of Plaintiffs' intention to allege bad faith pursuant to § 56-7-105. This is grounds alone for granting Defendant summary judgment on this claim.

Further, even if Plaintiffs had followed proper procedure, they still have not pointed to any evidence indicating bad faith. Plaintiffs instead point to Defendant's April 2, 2012 letter informing them that Defendant rejected their request for further payment for damage to the structure but that Defendant would "continue to work with you to evaluate your other damages." Contrary to Plaintiffs' argument that the offer to continue working with Plaintiffs referred to the claim for structural damage, the letter made clear that claim was closed. "[O]ther damages" referred to damages to personal property, for which a claim was still outstanding. In short, there is no evidence

8

that Defendant was trying to "hide the ball" regarding the claim for damages to the structure.

Plaintiffs have not shown that this controversy deals with anything other than a genuine dispute as to the value. And delay in settling a claim "does not constitute bad faith when there is a genuine dispute as to value, no conscious indifference to the claim, and no proof that the insurer acted from 'any improper motive.'" *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986) (quoting *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 556 S.W.2d 750 (Tenn.1977)). There was no showing of conscious indifference here. In fact, after promptly paying what it deemed proper for the damage, Defendants sent additional experts to survey the home on at least two occasions at Plaintiffs' request. Nor have Plaintiffs pointed to evidence going to an improper motive on Defendant's part.

Plaintiffs cannot use the bad faith statute to simply contest the adequacy of Defendant's payment. The necessary evidence of bad faith has not been shown. And, as the Court explained above, the time for an ordinary breach of contract action has long since passed. Because Plaintiffs have not put forth specific facts from which a rational jury could reasonably find in favor of Plaintiffs, the Court must grant summary judgment to Defendant.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 10). There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

**An order shall enter.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**